### UNITED STATES v. GROVES et al.
### No. 310.

Circuit Court of Appeals, Second Circuit.
Aug. 4, 1941.

Writ of Certiorari Denied Oct. 27, 1941.

See 62 S.Ct. 135, 86 L.Ed. ——.

---

Wendell Berge, Asst. Atty. Gen. (Oscar A. Provost and Leo C. Fennelly, Sp. Assts.

to Atty. Gen., and James E. Doyle, Atty., Dept. of Justice, Washington, D. C., on the brief), for the United States.

George Z. Medalie, of New York City (James B. Alley, Gordon Auchincloss, Louis Haimoff, and Charles R. Lowther, all of New York City, on the brief), for appellant Wallace Groves.

Harold Harper, of New York City (Frederick T. Kelsey and F. W. H. Adams, both of New York City, on the brief), for appellant George S. Groves.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Wallace and George S. Groves, Ernest B. Warriner, Philip DeRonde, Delaware Trading Co., Nassau Securities, Ltd., Philip DeRonde, Ltd., North American, Ltd., and Erwar Corporation, Ltd., were indicted for using the mails to defraud and for conspiring to do so. 18 U.S.C.A. §§ 338, 88. A severance was granted as to Warriner and DeRonde, who had fled the country, and as to Philip DeRonde, Ltd. Each of the remaining defendants was found guilty on fourteen of the fifteen counts of the indictment. Each of the corporate defendants was fined $1,000. Wallace Groves was fined a total of $22,000, and was sentenced to imprisonment for two years, with sentence of an additional two years' term suspended. George S. Groves was also fined $22,000, sentenced to eight months' imprisonment, and placed under a suspended sentence of another eight months. Wallace and George S. Groves appeal.

The indictment charged in substance that the defendants conspired to gain control of and defraud the General Investment Corporation. This was to be done by organizing the Erwar Corporation, with it acquiring control of International Equities Corporation, and in turn using the assets of the latter to acquire control of General Investment Corporation, hereinafter referred to as G. I. C. Warriner, as "front man," was to be made president of G. I. C., and the interest of Wallace Groves was to be kept secret, because he "had a bad reputation in Wall Street."

Each count of the indictment set forth three separate frauds, alleged to have been practiced on G. I. C. pursuant to the scheme. One was said to have been accomplished in this way. Warriner represented to one Devendorf, a minority stockholder of G. I. C., who was then contemplat-

ing the sale of his holdings, that G. I. C. was not prepared to purchase any of its own stock, and introduced Wallace Groves to him as a prospective buyer. Groves contracted to purchase Devendorf's stock, and that of other stockholders, at $87.50 per share. Thereupon Warriner as president represented to the G. I. C. directors that he had no connection with Wallace Groves, that Groves had come into control of a large block of G. I. C. stock which G. I. C. should not allow him to retain, and that Groves was willing to sell and G. I. C. might buy it at $102 per share. And hence G. I. C. purchased the stock of Groves at a total price about $300,000 in excess of that at which it could have been purchased from the stockholders.

As a second fraud, Warriner is alleged to have falsely represented to the G. I. C. directors that G. I. C. had incurred as a necessary expense a debt to DeRonde and Philip DeRonde, Ltd., of $250,000 as a commission on the sale of certain securities owned by G. I. C. of a Buenos Aires subway, for the purpose of allowing Wallace Groves to obtain a share of this sum.

The third fraud was alleged to be a similar procurement from G. I. C. of an unnecessary $150,000 commission to Bracht & Co. of Buenos Aires in connection with the same sale and for the same purpose.

There was ample evidence to establish Wallace Groves's participation with, and even his domination over, Warriner in organizing Erwar Corporation, and acquiring control of International Equities Corporation and G. I. C. It is not disputed that the transactions involving the purchase of Devendorf stock, as well as the payments of the allegedly fraudulent commissions, actually occurred. The contention is only that there was nothing sinister in them, at least as far as these appellants are concerned. But even if Wallace Groves's privity in Warriner's misrepresentations to the G. I. C. directors be considered only a matter of inference, there is so much support for it in the general business relations of the two, their close associations during the period of the frauds charged, their joint misrepresentations to Mr. Garver, the G. I. C. attorney, and Groves's earlier relations with DeRonde, that the finding of Groves's participation cannot seriously be challenged.

Appellants argue most strenuously the objection that Warriner's alleged misrepresentations in regard to the Devendorf

transactions were not proved. The only evidence of representations to the directors is said to be the minutes of the meeting at which the purchase was authorized. They disclose Warriner's statement of Groves's offer to sell at $102, and that there was "a thorough discussion of the matter." This is said to show silence perhaps amounting to a breach of trust, but no "affirmative misrepresentation," which appellants maintain is necessary to an action for common-law deceit, the essentials of which are thought to be incorporated into the mail fraud statute.

It is conceivable that Warriner never mentioned Groves's name at that meeting or then said anything in the way of a direct misrepresentation such as those charged, and that the board authorized the purchase on the basis of a judgment of the stock's value—its book value was declared by Devendorf to be $150—or for equally good business reasons of some other character. But this is hard to believe, in view of its actual price quoted on the Exchange, which was $83 the day after the meeting authorizing the purchase from Groves, and never over $100 within the preceding or succeeding six months.

■ If, however, the inference that Warriner justified the purchase to the Board in the manner alleged—naturally to be drawn from these and other proved facts, such as the misrepresentations to Garver— is thought not strong enough to justify the jury verdict, then evidence of "affirmative misrepresentations" may be found elsewhere. Garver testified that Warriner made to him, prior to the board meeting, all the misrepresentations charged in the indictment; and it is only reasonable to assume that this was for the purpose of having them relayed to the directors, and that they were. Indeed, the mere fact that Warriner told the board that the Groves stock could be purchased at $102 might be taken to imply all the essential misrepresentations alleged. A statement that it could be bought at $102 affirmatively implied that it could not be bought for less, whereas, on the contrary, Groves was actually obliged to turn it over to G. I. C. on tender of the $87.50 price which he had paid; for in collaborating with Warriner to take for their own profit stock which had originally been offered through Warriner to G. I. C., Groves had received the stock under a trust imposed by law for G. I. C.'s benefit. Meinhard v. Salmon, 249 N.Y.

458, 164 N.E. 545, 62 A.L.R. 1; Jackson v. Smith, 254 U.S. 586, 41 S.Ct. 200, 65 L. Ed. 418.

■■ But, further, appellant should not succeed, even if there were no "affirmative misrepresentations" expressly made by Warriner to the board. Warriner's and Groves's joint adventure in trading in G. I. C. stock and making a profit at G. I. C.'s expense was established. The evidence permitted at least the inference that Warriner's participation was not revealed to the board. Thus, there was certainly the use by a fiduciary of inside information to his own benefit and to the detriment of his cestui, which, when involving use of the mails, as here, we have recently held to be within the contemplation of the mail fraud statute. United States v. Buckner, 2 Cir., 108 F.2d 921, certiorari denied 309 U.S. 669, 60 S.Ct. 613, 84 L.Ed. 1016. See Campbell v. United States, 9 Cir., 12 F.2d 873, certiorari denied 273 U.S. 722, 47 S. Ct. 112, 71 L.Ed. 859. Appellants' contrary argument—that so to interpret the Buckner case would make application of the statute more extensive than the common-law action for deceit—must fail for two reasons. First, the statute is not limited to what would give rise to a civil action, in spite of what was said in another connection in United States v. Brown, 2 Cir., 79 F.2d 321, certiorari denied McCarthy v. United States, 296 U.S. 650, 56 S.Ct. 309, 80 L.Ed. 462; for that case itself, and Wilson v. United States, 2 Cir., 190 F. 427, certiorari denied 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558; United States v. Rowe, 2 Cir., 56 F.2d 747, certiorari denied 286 U.S. 554, 52 S.Ct. 579, 76 L.Ed. 1289; and Cowl v. United States, 8 Cir., 35 F.2d 794—all hold that a showing of loss to the victim is not necessary to conviction for mail fraud. And second, Warriner's silence under the circumstances does amount to common-law deceit; since he was under a positive duty to speak, his silence was a concealment of material facts, of which the board lacked knowledge, and in connection with which they were entitled to rely on him for advice. Loewer v. Harris, 2 Cir., 57 F. 368. We have no hesitation in holding Wallace Groves's conviction justified in respect of the Devendorf stock fraud.

■ In regard to the allegation of fraudulent procurement of the $250,000 commission to DeRonde, Wallace Groves makes only the objection that the evidence

was insufficient to show that it was to be split with himself and Warriner. But DeRonde had formerly been associated with Wallace Groves. He went to South America at Wallace Groves's request, long after negotiations had been initiated, when G. I. C. had an agent on the spot, and after an option had been taken for the purchase of the Buenos Aires subway securities. When an extension of the option was sought in order to secure further financial support, DeRonde represented by telegram that negotiations had begun with entirely new parties, which was not the fact. It was not until after the request for an extension, and very shortly before it was exercised, that DeRonde met Martin, the principal individual involved in arranging the sale. Added to such evidence that the commission actually was not earned is the extremely suspicious manner of its payment. While DeRonde was closeted with Warriner in the latter's office, a cashier's check for $100,000 and $150,000 in one-thousand-dollar bills were brought in and laid on Warriner's desk. On the same day DeRonde purchased $25,000 of English sterling and $75,000 of Argentine pesos. That the remainder went to Groves and Warriner is the clear inference; and the jury were entitled to make it upon the evidence before them.

 The third fraud was proved by direct evidence. Martin of Cica and Mueller of Bracht & Co., both of which companies participated in the sale of the subway securities, demanded a commission of DeRonde, and he promised to arrange one of $150,000 with his "principals," provided it should be split "between them and us." It was arranged, and Martin testified that Mueller told him that $75,000 was actually paid to DeRonde's "principals." One Billings, who was first sent to South America in connection with these transactions by G. I. C., testified to the same effect. But Billings had received his information after the termination of the conspiracy in the form of a mere narrative relation of it, and his testimony should not have been admitted. Logan v. United States, 144 U.S. 263, 309, 12 S.Ct. 617, 36 L.Ed 429, 445; Brown v. United States, 150 U.S. 93, 98, 14 S.Ct. 37, 37 L.Ed. 1010, 1013. Martin, however, said that he was informed by Mueller of the kickback "about the time it happened." The two were jointly involved in the conspiracy, and Mueller's statement was by way of a final settlement

with Martin in completion of it. It was therefore admissible. Id.; United States v. Bob, 2 Cir., 106 F.2d 37, 40, 125 A.L.R. 502, certiorari denied 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493; Wigmore, Evidence, 3d Ed. 1940, § 1079. Billings' testimony, though improperly admitted, was merely corroborative, and probably not prejudicial to Wallace Groves, since the case against him without Billings' testimony was unusually strong. United States v. Bob, supra.

 The last objection to Wallace Groves's conviction is that he was compelled to reveal that he had declined to testify before the grand jury. We overruled exactly the same objection in United States v. Mortimer, 2 Cir., 118 F.2d 266, and now adhere to what was said in that case.

 The case against George Groves, however, stands on an entirely different footing. There was a general showing of his blood and business relationship with Wallace Groves and of his co-operation with Wallace Groves and Warriner in setting up the corporations which were later used for criminal purposes. In addition, there is more direct evidence of his participation in the Devendorf stock deal, in that one of his corporations took some of Devendorf's stock at Wallace Groves's request, and resold it for him to G. I. C. But there was no further evidence at all of his connection with the procurement of the two fraudulent commissions, and under the circumstances we feel that a jury would not be justified in finding that he participated in either of them. But if it could not find that he participated in both, his conviction must be reversed; for it was allowed, over objection, to consider together his guilt in respect of each of the three frauds alleged, and hence each must be proven. United States v. Smith, 2 Cir., 112 F.2d 83. See United States v. Koch, 2 Cir., 113 F.2d 982, 984.

 Moreover, certain evidence was improperly admitted against him. It was shown that shortly after this indictment was returned, George Groves had removed papers from a Montreal bank vault and sought to have them destroyed. These facts were admissible only if the papers were identified. The time of the attempted destruction was equally as suggestive of a desire to protect Wallace Groves as of a desire to protect himself; but if admitted

to be the latter, the papers might have constituted evidence in regard to only one of the several frauds alleged. The only other identification was the later remark said to have been made by Wallace Groves to his wife that the papers "were just evidence of what the Government wanted" and that "it was very awkward that George could not burn" them. This hearsay was obviously a narrative statement made after the termination of the conspiracy, and not properly admitted. Logan v. United States, supra; Link v. United States, 8 Cir., 30 F.2d 342, 344. Consequently, evidence of the attempted destruction should have been excluded in the absence of proper foundation. This evidence was extremely prejudicial, and may well have been the basis upon which the jury made its finding of his guilt.

The conviction of Wallace Groves is therefore affirmed, while that of George S. Groves is reversed and a new trial ordered as to him.