## UNITED STATES v. McKAY et al.

### No. 25950.

District Court, E. D. Michigan, S. D.
July 18, 1942.

Louis B. Schwartz and Alfred B. Teton, Attys., Department of Justice, both of Washington, D. C., for the United States.

Eugene L. Garey, of New York City, for defendant Frank D. McKay.

E. J. Marshall and John B. McMahon, both of Toledo, Ohio, for defendants Stranahan, Harris & Co. Inc., and Robert S. Mikesell.

Harry N. Deyo, of Detroit, Mich., for defendant Stewart P. Blasier.

MILLER, District Judge.

This indictment, consisting of seven counts, charges the defendants Frank D. McKay, Stewart P. Blasier, Robert S. Mikesell and Stranahan, Harris & Company, Inc., with violations of Section 215 of the Criminal Code, 18 U.S.C.A. § 338, commonly referred to as the Mail Fraud Statute. The defendants have filed demurrers to each count of the indictment, pleas in abatement and motions for a bill of particulars.

The indictment alleges in substance that McKay was an influential and well-known political figure in the State of Michigan and was secretly employed by Stranahan, Harris and Company, a dealer in municipal bonds and other securities, to use his political influence in promoting the interests of that company; that Mikesell was vice-president of Stranahan, Harris and Company; that Blasier was employed by the corporation in charge of sales of bonds in Michigan and was an intimate business and personal friend of McKay; that on and after May 12, 1938, the City Commission of Grand Rapids, Michigan, had under consideration a proposal to construct an extension of the city water works system with the aid of a grant from the Public Works Administration; that the city's share of the cost of this project, amounting to approximately $2,255,000 was to be raised by the sale of bonds which would be sold at public sale after notice by publication as required by law; that between January 1, 1938, and December 31, 1938, the defendants did devise a scheme and artifice to defraud and for obtaining money by means of false pretenses from the City of Grand Rapids and its citizens and taxpayers, which scheme and artifice is then described by the indictment substantially as follows. The defendants would induce the city of Grand Rapids to sell the bonds to Stranahan, Harris and Company under such circumstances and conditions as would deprive the City of the highest and best bid and unjustly enrich the defendants at the expense of the city, its citizens and taxpayers; that the sale would be made under the false pretense of a public sale but would in fact be a private sale; that the defendants caused to be prepared and published a notice of the bond sale which contained false

statements and provided for unreasonable terms which would prevent bidding by anyone other than Stranahan, Harris and Company; that the defendants would discourage other dealers from bidding at the sale by making certain false representations, all of which would enable Stranahan, Harris and Company to purchase bonds at $1,010 per $1,000 bond, when the true and reasonable value of each such bond was $1,150; that following public protest and refusal of the Public Debt Commission of the State of Michigan to approve said notice a second notice of bond sale to be held on August 22, 1938, was published about August 13, 1938; that Stranahan, Harris and Company secretly formed a joint account with Paine, Webber and Company and B. J. Van Ingen & Company, dealers in securities, by which the defendants would cause two bids to be filed at the sale on August 22, 1938, namely, a high bid in the name of B. J. Van Ingen and Company without disclosing the interest or participation of the other two companies, and a lower bid in the name of Stranahan, Harris and Company and Paine, Webber and Company without disclosing the interest of B. J. Van Ingen and Company; that should any bid be higher than the bid of Stranahan, Harris and Company and Paine, Webber and Company but lower than the bid of B. J. Van Ingen and Company the defendants would buy the bonds on the B. J. Van Ingen and Company bid, but if the bid of Stranahan, Harris and Company and Paine, Webber & Company should be next highest to the Van Ingen bid the defendants would secure the withdrawal of the high bid of B. J. Van Ingen and Company and purchase the bonds on the bid of Stranahan, Harris and Company and Paine, Webber and Company; that the defendants would falsely represent to the City of Grand Rapids that the Van Ingen bid was a bona fide and unconditional bid whereas in truth it was not a bona fide and unconditional bid, but was conditioned upon the bid of Stranahan, Harris and Company and Paine, Webber and Company not being the second high bid; that the defendants by means of false representations would cause the City of Grand Rapids to return to Van Ingen and Company its good faith deposit of $22,550 and would fraudulently deprive the City of Grand Rapids of the benefit of the difference between the high bid and the second high bid amounting to approximately $20,000; that the

defendants having so purchased the bonds would resell them to the public at a profit which was unlawfully and corruptly increased beyond a normal and legitimate profit by the means of the scheme alleged, and that the profits so obtained would be apportioned among the defendants. Each of the counts then alleges a particular use of the mails by the defendants for the purpose of executing the scheme charged.

### Demurrers to the Indictment.

In support of the demurrers the defendants contend that the allegations contained in the indictment do not show any violation of Section 215 of the Criminal Code. They urge upon the Court that the words in the statute "Whoever, having devised or intending to devise any scheme or artifice to defraud" are to be construed in their common-law sense, which means the exclusion of any scheme except one to perpetrate a common-law fraud; that in order for a common-law fraud to exist there must be either a misrepresentation of fact knowingly made, or a failure to disclose a material fact when a duty existed to do so, neither of which situations exist in the present case; that any misrepresentations made must be made to the victim, pointing out that in the present case any misrepresentations if made were made to parties other than the victims. They further point out that the defendants did not and could not cause the notice of bond sale to be prepared and published, as such acts were the result of independent action on the part of the city officials who are presumed to know the law and to have correctly performed their duty; that the terms inserted in the notice were not illegal; that the motive on the part of the defendants to make a profit does not make the scheme a fraudulent one; that the withdrawal of the high offer to buy the bonds before it was accepted was the exercise of a legal right available to any offeror negotiating for a contract; and that any participation by them in a joint bid with others, even without disclosure to the city to whom they owed no duty, was a proper and common practice and in no way illegal or fraudulent. They have filed an exhaustive brief in support of this position which is very ingenious in its presentment of the questions involved and its treatment of them.

Defendants' main reliance is upon the proposition that "any scheme or artifice to defraud" is restricted to a

scheme containing the essential elements of common law fraud, which do not exist in the present case. Particular reliance is placed upon the decision in Fasulo v. United States, 272 U.S. 620, 47 S.Ct. 200, 71 L.Ed. 443, which in effect repudiates the rule previously laid down by the Circuit Court of Appeals for the 6th Circuit in Horman v. United States, 116 F. 350. But it is not necessary to rely upon the decision in Horman v. United States or to depart from the decision in Fasulo v. United States in order to hold the indictment valid. The net result of those two decisions is merely that regardless of how broad an interpretation is put upon the words "to defraud" they do not include threats and coercion through fear or force. It is true that in both the Fasulo case and in Hammerschmidt v. United States, 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968, referred to in the Fasulo opinion, there is dictum to the effect that the words "to defraud" as used in the statute mean deceit or fraud as known to the law or as generally understood, but it is evident in both opinions that the words were used more in connection with the ruling that the phrase did not include threats or coercion rather than in attempting to define exactly what it did include. In the Fasulo case [272 U.S. 620, 47 S.Ct. 202, 71 L.Ed. 443] the opinion states: "A comprehensive definition of 'scheme or artifice to defraud' need not be undertaken. The phrase is a broad one and extends to a great variety of transactions. But broad as are the words 'to defraud,' they do not include threat and coercion through fear or force." The Hammerschmidt opinion [265 U.S. 182, 44 S.Ct. 512, 68 L.Ed. 968] treats the question in the following words: "It is true that the words 'to defraud' as used in some statutes have been given a wide meaning, wider than their ordinary scope. They usually signify the deprivation of something of value by trick, deceit, chicane, or overreaching. They do not extend to theft by violence. They refer rather to wronging one in his property rights by dishonest methods or schemes. One would not class robbery or burglary among frauds." It will be noticed that both opinions admit that the phrase "to defraud" is a broad one and very wide in its scope. Such a construction of the statute, which is wider than the common law idea of fraud, is justified by the use of the alternative in the statute which refers to "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses." As was pointed out in Schwartzberg v. United States, 2 Cir., 241 F. 348, 352, a scheme to defraud under Section 215 of the Criminal Code is wholly different from the crime of conspiracy and also is "not to be confounded with the offense known as obtaining money under false pretenses." The broad purpose of the statute is pointed out in Durland v. United States, 161 U.S. 306, 16 S.Ct. 508, 511, 40 L.Ed. 709, where the opinion reads in part as follows:

"But the contention on his part is that the statute reaches only such cases as, at common law, would come within the definition of 'false pretenses,' in order to make out which there must be a misrepresentation as to some existing fact, and not a mere promise as to the future. * * *

"The question thus presented is one of vital importance, and underlies both cases. We cannot agree with counsel. The statute is broader than is claimed. Its letter shows this: 'Any scheme or artifice to defraud.' * * *

"In the light of this the statute must be read, and, so read, it includes everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future. The significant fact is the intent and purpose."

In Scheinberg v. United States, 2 Cir., 213 F. 757, Ann.Cas.1914D, 1258, it was pointed out how the scope of the statute as originally enacted has been greatly broadened by amendment, and this purpose has apparently been further developed by the decisions of recent years. In Gouled v. United States, 2 Cir., 273 F. 506, 508, this same thought was expressed by the Court in the following words: "As it now stands, any kind or species of scheme or artifice to defraud is punishable in the national courts, if and whenever for the purpose of executing that scheme the postal establishment is used in the statutory manner and form." The following cases also hold that in order to establish a scheme to defraud within the scope of the statute it is not necessary that there should be an actual misrepresentation of an existing fact or that the elements necessary to constitute the common-law action of deceit exist: Pelz v. United States, 2 Cir., 54 F.2d 1001, 1005; Fournier v. United States, 7 Cir., 58 F.2d 3; United States v. Buckner, 2

1012

Cir., 108 F.2d 921; United States v. Groves, 2 Cir., 122 F.2d 87; Shushan v. United States, 5 Cir., 117 F.2d 110, 115, 133 A.L. R. 1040. In United States v. Buckner, supra [108 F.2d 926], the Court said "the statute prohibits any scheme or artifice to defraud, and the word 'defraud' must be construed broadly." In referring to this statement and giving it approval in a later case, the same Court said in United States v. Groves, supra [122 F.2d 90]: "Appellants' contrary argument—that so to interpret the Buckner case would make application of the statute more extensive than the common-law action for deceit—must fail for two reasons. First, the statute is not limited to what would give rise to a civil action, in spite of what was said in another connection in United States v. Brown, 2 Cir., 79 F.2d 321," etc. There are numerous decisions which show that a scheme to defraud can exist under the statute without the existence of all of the elements constituting a common-law fraud. For instance at common law damage to the victim is an essential element. But under the Mail Fraud Statute a showing of loss to the victim is not in any way essential. United States v. Brown, 2 Cir., 79 F.2d 321; Wilson v. United States, 2 Cir., 190 F. 427; United States v. Rowe, 2 Cir., 56 F.2d 747; Cowl v. United States, 8 Cir., 35 F.2d 794. Again, in order to constitute common-law fraud it is essential that the victim be actually deceived. Under the Mail Fraud Statute the success of the scheme is immaterial so long as there exists an intent to deceive. United States v. Zalewski, D.C.W.D.Ky., 29 F.Supp. 755, and the cases from the 6th Circuit therein cited. Probably the most recent and complete answer to the defendants' contention on this point is contained in the opinion of the Circuit Court of Appeals for the 5th Circuit in Shushan v. United States, supra [117 F.2d 115, 133 A.L.R. 1040], which reads in part as follows: "But there may be a scheme to defraud by other means than express false representations. A scheme to get money unfairly by obtaining and then betraying the confidence of another, or by corrupting one who acts for another or advises him, would be a scheme to defraud though no lies were told. A scheme to get a public contract on more favorable terms than would likely be got otherwise by bribing a public official would not only be a plan to commit the crime of bribery, but would also be a scheme to de-

fraud the public. The fact that the official who is bribed is only one of several and could not award the contract by himself does not change the character of the scheme where he is expected to have influence enough to secure the end in view. No trustee has more sacred duties than a public official and any scheme to obtain an advantage by corrupting such an one must in the federal law be considered a scheme to defraud." The indictment in this case charges acts which fall directly within the language above cited from the Shushan case, and regardless of the other questions involved the demurrers on this phase of the case would have to be overruled upon the authority of this decision alone.

 It is probably advisable to also point out that even if it was required to allege and prove a misrepresentation in order to constitute the crime charged, the indictment actually charges several misrepresentations. The defendants are charged with having misrepresented that the first scheduled bond sale would be a public sale, when they well knew that it would be a private sale in which they would have no competition; that the bids submitted by the syndicate at the sale of August 22, 1938, were independent competitive bids, although the defendants knew they were collusive and conditional; and that the Public Works Administration contemplated the purchase of said bonds when no sale of the bonds to the Public Works Administrator was contemplated by the defendants, and the Public Works Administration had not expressed any willingness to purchase the bonds. The indictment alleges that the notice of bond sale was prepared by and caused to be published by the defendants for the purpose of preventing bidding at the sale by any other bidder, which notice was false and fraudulent and known to so be by the defendants. Whether or not the proof will sustain these allegations is another question; in considering the demurrer they are accepted as the facts. It may also be true that each act on the part of the defendants, when considered separately by itself, may be entirely proper and within the legal rights of the defendants. But at the same time when a number of separate acts are combined for the purpose of accomplishing an illegal result, the combined effect of all the acts may be illegal. The allegations in the indictment must be considered as a whole. They

charge the defendants with attempting to deprive the city of Grand Rapids of the highest and best bid for the bonds it was selling and to unjustly enrich the defendants at the expense of the city and of its citizens and taxpayers, all through the medium of the alleged scheme and artifice to defraud. If the combination of all the acts on the part of the defendants had this result, as is charged in the indictment, the innocent character of each individual act has very little significance. The intent of the ultimate accomplishment is what must be considered. Brooks v. United States, 8 Cir., 146 F. 223; Clark v. United States, 289 U.S. 1, 12, 53 S.Ct. 465, 77 L. Ed. 993.

**** The specific use of the mails relied upon in the first three counts of the indictment are on July 28, 1938, August 4, 1938, and August 5, 1938. The second and final bond sale was held on August 22, 1938. The mailings relied upon in Counts 4, 5, 6 and 7 of the indictment were on September 9, 1938, September 23, 1938, October 6, 1938, and October 10 1938. These last four mailings were communications between the members of the syndicate which bought the bonds and dealt with the furnishing of data and the reimbursement of expenses incurred in advertising the bonds to the public after they had been purchased. That necessarily occurred after the fraud if any existed, had been practiced upon the city of Grand Rapids, its citizens and taxpayers. The scheme, if any existed, to secure the bonds at a price much under the fair and reasonable market value of the same and at a price which would unjustly enrich the defendants at the expense of the city and its taxpayers had been fully accomplished before the mailings referred to in each of the last four counts of the indictment. It is well settled that it is not sufficient that the use of the mails relied upon must merely relate to the scheme to defraud or be connected with it in some way, but it is essential that it must be for the purpose of executing the scheme. If the scheme or artifice to defraud as charged in the indictment was completed before the mail was used the offense denounced by Section 215 of the Criminal Code does not exist. Stapp et al. v. United States, 5 Cir., 120 F.2d 898; Spillers v. United States, 5 Cir., 47 F.2d 893; Dyhre v. Hudspeth, 10 Cir., 106 F.2d 286; McNear v. United States, 10 Cir., 60 F.2d 861; McLendon v. United States,

6 Cir., 2 F.2d 660; United States v. Dale, D.C., 230 F. 750; United States v. Leche, D.C., 34 F.Supp. 982, 986; United States v. Siebricht, 2 Cir., 59 F.2d 976; Mitchell v. United States, 10 Cir., 118 F.2d 653. The defendants contend that the mailings relied upon in the first three counts of the indictment were not in furtherance of the alleged scheme, but were merely connected with it in a collateral way. But this contention overlooks the rule which is also well settled that a letter which is mailed as merely a step in a general scheme to defraud at an early stage in the proceedings, although not in furtherance of the execution of the final scheme, is nevertheless within the scope of the statute. United States v. Goldman, 6 Cir., 220 F. 57; Shea v. United States, 6 Cir., 236 F. 97; Edwards v. United States, 6 Cir., 249 F. 686. The demurrers to Counts 1, 2 and 3 of the indictment are overruled, while the demurrers to Counts 4, 5, 6 and 7 of the indictment are sustained.

### Pleas in Abatement.

The indictment was returned on November 28, 1940. A plea in abatement was filed by the defendant McKay on August 12, 1941, and by the defendants Stranahan, Harris and Company, and Mikesell on June 11, 1942. They are similar in form and present the same issues. Section 88 of the Judicial Code, Section 168, Title 28 U. S.C.A., provides that terms of the District Court for the Eastern District of Michigan, Southern Division, in which this case is pending, shall be held at Detroit on the first Tuesdays in March, June and November. The pleas state in substance that the grand jury which returned the indictment was impaneled on March 5, 1940, to serve as a grand jury during the March 1940, term; that an order was entered by the Court on May 28, 1940, authorizing the March, 1940, term of grand jury to continue to sit during the June, 1940, term solely to finish investigations begun by it during the March, 1940, term but not finished; that an order was entered by the Court on October 29, 1940, authorizing the March, 1940, term grand jury to continue to sit during the November, 1940, term solely to finish investigations begun by it during the March, 1940, term but not finished in either the March or June, 1940, terms; that there was a regularly impaneled and acting grand jury throughout the June, 1940, term and also throughout the November, 1940, term; that the crimes

and matters charged in the indictment were not considered or investigated by the grand jury at any time during the March, 1940, term, and were not considered or investigated until after the March, 1940, term and at a time when the grand jury could not lawfully investigate matters charged in the indictment or return the indictment which was returned; that the grand jury which returned the indictment did so without jurisdiction, was acting under cover of an authority which was void and that the indictment returned constitutes only the charge of an aggregation of individuals which is not an indictment as a matter of law. The pleas further state specifically that the matters charged in the indictment could not have been investigated by the grand jury without the appearance and examination before them of certain designated persons, and that such persons did not appear and were not examined by the grand jury until the latter part of August, 1940, which was beyond and after the regular March, 1940, term of Court for which the grand jury was impaneled to serve. In support of this plea the defendants claim that the authority of the grand jury to return a valid indictment is governed entirely by statute; that the only authority which it had in the present case to act after the expiration of the March, 1940, term was that provided by Section 284 of the Judicial Code, Section 421, Title 28 U.S.C.A., which provides in part as follows: "A district judge may, upon request of the district attorney or of the grand jury or on his own motion, by order authorize any grand jury to continue to sit during the term succeeding the term at which such request is made, solely to finish investigations begun but not finished by such grand jury, but no grand jury shall be permitted to sit in all during more than eighteen months." It is contended that since the investigation resulting in the present indictment was not begun in the March term, 'there was no authority to begin it in the subsequent term during which the life of the grand jury was continued, since the authority in the subsequent terms is restricted solely to investigations begun but not finished in the original term. The Government relies upon Sections 556 and 556a, Title 18 U.S.C.A. in answer to this contention. Section 556 provides that no indictment shall be deemed insufficient, nor shall the trial or other proceedings thereon be affected by reason of any defect or im-

perfection in matter of form only, which shall not tend to the prejudice of the defendant. Section 556a, Title 18 U.S.C.A. provides: "No plea to abate nor motion to quash any indictment upon the ground of irregularity in the drawing or impaneling of the grand jury or upon the ground of disqualification of a grand juror shall be sustained or granted unless such plea or motion shall have been filed before, or within ten days after, the defendant filing such plea or motion is presented for arraignment." It further contends that independent of this statute, which was enacted in 1934, the common-law rule required a defendant to present a plea in abatement promptly. Agnew v. United States, 165 U.S. 36, 42 through 45, 17 S.Ct. 235, 41 L.Ed. 624; Hyde v. United States, 225 U.S. 347, 372 through 374, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; Moffatt v. United States, 8 Cir., 232 F. 522; Ard v. United States, 5 Cir., 54 F.2d 358; Chafin v. United States, 4 Cir., 5 F.2d 592, 595; United States v. American Tobacco Co., D.C., 177 F. 774, 777.

 In the Court's opinion neither of the statutes relied upon by the Government is applicable to the present case. It is well settled that Section 556, Title 18 U.S.C.A., refers to defects in form only. It was not the intent of the statutes to dispense with the rules which require that the essential elements of a valid indictment must exist, but it authorizes the Court to disregard merely loose or inartificial forms of averment. Hagner v. United States, 285 U.S. 427, 433, 52 S.Ct. 417, 76 L.Ed. 861; Hewitt v. United States, 8 Cir., 110 F.2d 1, certiorari denied 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409; United States v. Fawcett, 3 Cir., 115 F.2d 764, 132 A.L.R. 404. Section 556a, Title 18 U.S.C.A. is restricted by its terms to irregularities in the drawing or impaneling of a grand jury or upon the ground of disqualification of a grand juror. This refers to the constitution of the grand jury at its inception. All the cases referred to above which are relied upon by the Government deal with irregularities in the selection of the grand jury when it was first impaneled or with irregularities occurring in the grand jury room while it was legally in session. No such questions are involved in the present case. In this case the grand jurors were lawfully drawn and impaneled. No question is raised as to the qualification of any

grand juror; there is no question but that it started upon its work and performed its duty properly as long as it was legally in existence. The question involved here is solely the legality of its existence after the termination of the March, 1940, term. A United States District Court is one of limited jurisdiction with only such powers as are expressly conferred by statute. The grand jury sitting in such a court is strictly a creature of statute. In re Mills, Petitioner, 135 U.S. 263, 267, 10 S.Ct. 762, 34 L.Ed. 107. There is no such thing as a de facto grand jury in a Federal Court. Its original life and authority to act, and any continued existence which it may have after the expiration of the term for which it was impaneled, depends strictly upon statutory authority, and unless that authority is complied with there is no jurisdiction to return an indictment. These questions were discussed at length by the Circuit Court of Appeals for the 7th Circuit in United States v. Johnson, 123 F.2d 111, in which the present contentions of the Government were all disposed of adversely to the Government's position in this case. The pleas in abatement present a valid defense to the indictment if the allegations of fact contained therein can be established by the proof. The defendants are entitled to the opportunity to offer evidence in support of the pleas. The motion of the Government to strike the pleas in abatement is overruled.

## Motions for Bill of Particulars.

The motions for a bill of particulars are supported by the affidavits of different counsel to the general effect that the indictment is in such general language and so framed that the defendants can not reasonably prepare their defense or know the range and character of the proof with which they may be confronted on the trial. It is well settled that in any criminal indictment the defendant is entitled to be advised of the specific acts with which he is charged in order that he may adequately prepare his defense, but he is not entitled to require the Government to disclose in detail the evidence upon which it expects to rely. The application for a bill of particulars is one which is addressed to the discretion of the trial court, which should keep in mind that the Government in filing a bill of particulars should not be unduly limited in the scope and presentation of its evidence offered at the trial in support of the offense charged in the indictment. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545. In the present case the nature of the offense and the scheme charged are set out quite at length and for the most part fully apprise the defendants of what acts on their part the Government intends to prove. Most of the requests by the defendants are for a disclosure of the Government's evidence, and accordingly will be denied. In a few instances I believe the defendants are entitled to additional facts. In the motion by the defendant Frank D. McKay the requests contained in Paragraph 1 and all subdivisions thereof are sustained. The request in the first sentence of Paragraph 3, and so much of the request in 3a as reads, "what if any, pretenses, representations and promises claimed to be made by him were false and fraudulent" are sustained; the remaining requests in Paragraph 3a are overruled. The requests contained in the first sentence of Paragraph 4, and the requests in 4a, 4e, 4f, and 4g are sustained; the requests contained in Paragraphs 4b, 4c and 4d are overruled. The requests contained in Paragraphs 2, 5, 6, 7, 8 and 9 are overruled. With respect to the motion of Stranahan, Harris and Company, that part of the request contained in Paragraph 1 reading as follows "The person who employed him to perform such acts and the compensation paid to him therefor" is granted, with the rest of the request contained in Paragraph 1 and all of the requests contained in Paragraph 2 overruled. With respect to the motion of the defendant Mikesell, so much of the request contained in Paragraph 1 reading as follows "State whether it is claimed that Robert S. Mikesell in any way participated in the alleged scheme and artifice in preparing and causing to be prepared the notice of bond sale of August 11, 1938, as set forth in the indictment" and "and if any false pretenses, representations or promises are claimed to have been made by him, then the time and manner thereof and the persons to whom made," and the requests contained in Paragraph 8 of the motion are granted, while the remaining requests contained in Paragraph 1, and the requests contained in Paragraphs 2, 3, 4, 5, 6, 7, 9, 10, 11 and 12 are overruled.