**STATE, Plaintiff-Appellee, v. SINGLETON,
Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21141.   Decided March 30, 1949.

Frank T. Cullitan, County Pros., Saul S. Danaceau, Cleveland, for plaintiff-appellee.

Stephen M. Young, Cleveland, for defendant-appellant.

(DOYLE, PJ, of the 9th District; GUERNSEY, J, MIDDLETON, J, of the 3rd District, sitting by designation in the 8th District.)

**OPINION**

By GUERNSEY, J:

An indictment against the defendant, John W. Singleton, on a charge of larceny by trick (§12447-1 GC) was returned by the Grand Jury of Cuyahoga County at the January Term of 1948 and presented to the court on February 5, 1948. The indictment contained fifteen counts, in each of which there was a charge which, except for a different name, date and amount in each instance, read as follows:

"Indictment for Larceny by trick.—(§12447-1 GC with Counts.)

The State of Ohio

ss

Cuyahoga County

On the term of January in the year of our Lord One Thousand Nine Hundred and Forty-Eight.

The Jurors of the Grand Jury of the State of Ohio, within and for the body of the county aforesaid, on their oaths, In the Name and By the Authority of the State of Ohio,

Do find and present that John W. Singleton, on or about the 8th day of July, 1947, at the County aforesaid, did unlawfully obtain possession of certain money in the amount and value of Twenty-one Hundred and Twenty-Five Dollars from Charles L. Bradley, the property of Charles L. Bradley and did obtain said property from the said Charles L. Bradley with the consent of the said Charles L. Bradley, which consent the said John W. Singleton induced by false and fraudulent representations and pretenses, with the intent of permanently depriving said Charles L. Bradley of said Twenty-One Hundred and Twenty-Five Dollars ($2125.00) contrary to the form the statute in such case made and provided, and against the peace and dignity of the State of Ohio."

On March 16, 1948, the Prosecuting Attorney furnished and filed an Amended Bill of Particulars, being the Bill of Particulars of the offense charged in the indictment upon which the cause was submitted, which reads as follows:

"Responding to the application of the defendant, John W. Singleton, for a bill of particulars, the Prosecuting Attorney says that the said defendant, John W. Singleton, during the period of time beginning with February, 1947 and ending with November, 1947, both months inclusive, carried on and carried out a scheme and artifice to trick and to defraud each and all of the persons named in the various counts in the indictment and numerous other persons, all of whom shall be hereinafter referred to as victims, the said scheme and artifice being a swindle.

The defendant, John W. Singleton, in the County of Cuyahoga and State of Ohio and within the period of time aforesaid, set up an extensive business and establishment with agents, employees and associates acting under his direction and control and proceeded to operate ostensibly as a dealer in automobiles using in the course of his activities such names as J. & W. Sales Service, Louis Auto Sales and J. W. Singleton Motors Inc.

The defendant, John W. Singleton, falsely and fraudulently represented and pretended to each of the said victims that he, the said John W. Singleton, was an automobile dealer licensed by the State of Ohio.

The defendant, John S. Singleton, falsely and fraudulently represented and pretended to each of the said victims that he would deliver a designated new automobile to each of said victims for the money given him or his agents or employees by each of the said victims.

The said defendant, John W. Singleton, falsely and fraudulently represented and pretended to each of the said victims that such designated new automobile would be so delivered to each of the said victims within ten weeks, and falsely and fraudulently represented and pretended that in the event such delivery was not made the moneys would be refunded to each of said victims within said period of ten weeks. During the earlier part of the aforesaid period beginning with February, 1947 and ending with November, 1947, the precise time being unknown, the period of time within which the automobiles were to be delivered or the moneys refunded was six weeks; and for a short period of time during the earliest portion of said period of time, the precise time being unknown, such deliveries or refunds were to be made within four weeks.

To entice the said victims and to induce said victims to turn over to the defendant their moneys, the said defendant, John W. Singleton, caused to be delivered to numerous other persons practically new automobiles at prices substantially less than the prices paid for said automobiles by the said defendant, John W. Singleton, the said John W. Singleton appropriating part of the funds of said victims to make payment therefore and appropriating to his own use and purposes the remaining part of the funds of the said victims; and the said defendant, John W. Singleton, did not intend to deliver said automobiles to the said victims and did not intend to refund said moneys to the said victims.

The defendant, John W. Singleton, carried out said scheme and artifice and made said false and fraudulent representation and pretenses by himself and by and through his agents, employees and associates.

The defendant, John W. Singleton, enticed his numerous victims, including each and every one of the persons named in the indictment, by means of the scheme and artifice above described, and by the use of fraudulent representations and pretenses, above set forth, to turn over to the said defendant, John W. Singleton, their moneys in cash, or as the proceeds of official bank checks, or certified checks or other bank checks, all such payments being made in accordance with the directions and instructions of the said defendant, John W. Singleton.

The defendant, John W. Singleton, obtained possession of the moneys of the persons listed in the various counts in the

indictment, inducing their consent by false and fraudulent representations and pretenses, in the amounts and at the approximate times as follows:

| Name: | Amount: | Approximate Time: |
|---|---|---|
| Charles L. Bradley | 2125.00 | July 8, 1947 |
| Anton Chandek | 1841.00 | August 9, 1947 |
| Martin Halko | 2285.00 | July 1, 1947 |
| John Krowiak | 2285.00 | July 29, 1947 |
| Joseph Potochnik | 1770.00 | July 24, 1947 |
| James Kaatky | 2300.00 | July 10, 1947 |
| Ralph Everstine | 2175.00 | June 23, 1947 |
| Rudolph J. Kuk | 2250.00 | August 25, 1947 |
| Joseph Kostyk | 1500.00 | August 27, 1947 |
| Evelyn D. Schweitz | 2450.00 | Sept. 3, 1947 |
| Francis Kavanaugh | 1650.00 | June 21, 1947 |
| Fred Goforth | 1864.00 | July 29, 1947 |
| Edward Tysl | 1975.00 | July 1, 1947 |
| Harry A. Overman | 2285.00 | Sept. 26, 1947 |
| Rose Boehm | 2220.00 | June 26, 1947 |

Frank T. Cullitan, Prosecuting Attorney of Cuyahoga County, Ohio."

On March 20, 1948, the defendant filed a demurrer. On March 31, 1948, the court overruled said demurrer.

On April 2, 1948, the defendant entered his plea of not guilty and on April 6, 1948, the trial proceeded.

Because of the absence of Rose Boehm from the state, at the time of trial, Count No. 15 on motion of the prosecuting attorney withdrawn from the indictment.

On April 23, 1948, the jury found the defendant guilty of larceny by trick on each of the fourteen counts as charged in the indictment.

On April 24, 1948, a motion for new trial was filed.

On May 5, 1948, the court on hearing of the motion for a new trial overruled the same and rendered judgment on the verdict of the jury, sentencing the defendant to the Ohio State Penitentiary.

This is the judgment from which this appeal is taken.

The defendant appellant assigns error in the following particulars:

1. The court erred in admitting the testimony of the defendant taken in bankruptcy court.

2. There was no proof of any larceny by trick.

3. Error in the general charge, and in refusing requests to charge of the defendant.

4. The court erred in the admission of evidence.

5. Irregularity in the proceedings of the court.

6. Other errors of law.

7. The judgment is not sustained by sufficient evidence and is contrary to law.

These assignments of error will be considered in the order mentioned, and such of the evidence in the case as is necessary to a consideration of any of the assignments will be discussed under that assignment.

1. As appears from the bill of exceptions, the state offered and the court admitted the testimony of Henry Toll, a court reporter, of the testimony given by the defendant, John W. Singleton, at a hearing before Carl D. Friebolin, a referee in bankruptcy, Wednesday, Dec. 3, 1947 at 9:30 o'clock A. M., and at an adjournment thereof to Friday, Dec. 8, 1947.

Further testimony in the case by the said Henry Toll and Ida L. Drake, a clerk of the Bankruptcy Court, discloses that a petition in involuntary bankruptcy had been filed during the month of November, 1947 in the District Court of the United States for the Northern District of Ohio, Eastern Division, against the defendant, John W. Singleton, doing business as Louis Auto Sales & Service Company and doing business as J. W. Singleton Motors Company, by three of his creditors and that he was adjudged a bankrupt, under the above name and style, during the month of December, 1947.

It further appears that this hearing was held prior to an adjudication of bankruptcy. It was at this hearing that said Singleton consented to be adjudged a bankrupt.

It further appears that the first meeting of creditors of the bankrupt was not held until January 13, 1948.

The witness was later called for cross-examination by the defendant and the defendant cross-examined him as to the testimony given by said John W. Singleton at the first meeting of creditors held on Jan. 13, 1948; and after the defendant had examined the witness as to such testimony the state was permitted to examine the witness with reference to further testimony given by said John W. Singleton at said meeting of Jan. 13th.

Under this first assignment of error the defendant contends the court erred in admitting evidence of Henry Toll as to the testimony of the defendant, John W. Singleton, at the hearing before the referee on December 3, 1947 and also erred in admitting the testimony of Henry Toll on examination by the state, as to the testimony of defendant, Singleton, at the first meeting of the creditors on January 13, 1948.

As supporting this contention he relies on the following provision of the Bankruptcy Act as follows:

"The bankrupt shall * * * (10) at the first meeting of his creditors, at the hearing upon objection, if any, to his discharge, and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealing with his creditors and other persons, the amount, kind and whereabouts of his property, and in addition all matters which may affect the administration and settlement of his estate or the granting of his discharge; but no testimony given by him shall be offered in evidence, against him in any criminal proceeding, except such testimony as may be given by him in the hearing of objections, if any, to his discharge."

Title Eleven, Section 25 (9) Subsection (10) 3 F. C. A. 9."

Under the provisions of the Bankruptcy Act a person is not a bankrupt within the meaning of the Act until he has been adjudicated bankrupt.

By the terms of the above quoted provisions it is only the testimony of the bankrupt that shall not be offered in evidence against him in any criminal proceeding, so at the hearing of Dec. 3, 1947, and its adjournment to Dec. 8, 1947, the testimony of the defendant, Singleton, did not come within the purview or protection of this provision. He stood at that time as an ordinary litigant in an adverse proceeding in court, and his testimony at the hearing on those dates was properly offered in evidence against him.

By examining Henry Toll as to the testimony of the defendant Singleton, at the first creditors' meeting on Jan. 13, 1948, the defendant waived the immunity afforded him by the above quoted provision of the Bankruptcy Act.

As the defendant elicited part of the testimony of the defendant at said meeting of creditors on January 13, 1948, on his cross-examination, the state had the right to offer the entire testimony or any part thereof in evidence.

Wigmore on Evidence, Second Edition, Volume 1, page 189.

Wharton's Criminal Evidence, Eleventh Edition, Volume 1, page 613.

Jones' Commentary on Evidence, pages 4589 et seq.

State v. Hubbard, 126 Kansas 1293; 266 Pacific, 939; 58 A. L. R. 327.

Morey v. State, 72 Florida 45; 72 Southern 490.

This assignment is therefore without merit.

In his second assignment of error the appellant assigns error in that there was no proof of any larceny by trick. In support of this assignment he makes four general contentions which may be summarized as follows:

(a) In order to constitute larceny by trick a false pretense must relate to a past event or an existing fact and in this case there is no proof of any false pretense relating to a past event or an existing fact.

(b) As the testimony of the various persons named in the various counts of the indictment, and of other witnesses who purchased automobiles from the defendant, shows that each of them, knowing that the automobiles purchased by them were not then in stock and would not be delivered to them until a fixed date in the future, upon the representations of the salesmen employed by the defendant that if such automobiles were not delivered to them by the time fixed for delivery, the amount of the purchase price thereof paid by them would be returned to them upon demand and that interest-bearing notes of the seller for the amount of the purchase price would be given by the seller to assure the performance of said agreement on the part of the seller, purchased such automobiles and paid the purchase price thereof by cash or certified check with the understanding and agreement that the automobiles were not to be delivered until a fixed date in the future, and that if they were not delivered by such time the amount of the purchase price thereof was to be returned to them upon demand, and accepted interest-bearing notes in the principal sum of the purchase price paid by them, payable on the future date fixed for delivery of such automobiles, to assure the performance of such understanding and agreement on the part of the seller, they must be considered in law as having voluntarily parted with the possession and title to the purchase price, in the same manner as one loaning money, when making a loan, parts with the possession and title to his money and not as being induced thereto by false or fraudulent representation, pretense, token or writing.

(c) The evidence shows that the defendant did not personally make the sales of the automobiles in question, but that such sales were made by salesmen employed by him and such representations as were made in connection with such sales were made by such salesmen in good faith and without intent to defraud, and consequently there is a failure of proof that the defendant made the false or fraudulent representations he is charged with making.

(d) Failure of proof in other particulars.

2. The indictment is based on the provisions of §12447-1 GC. The language of this statute as as follows:

"Sec. 12447-1 GC. Larceny by trick; penalty.

Whoever obtains possession of, or title to, anything of value with the consent of the person from whom he obtained it, provided he induced such consent by a false or fraudulent representation, pretense, token or writing, is guilty of larceny by trick, and, if the value of the thing obtained by such false or fraudulent representation, pretense, token or writing is thirty-five dollars or more, shall be imprisoned in the penitentiary not less than one year nor more than seven years, or, if the value is less than that sum, be fined not more than two hundred dollars or imprisoned not more than thirty days, or both."

This section appears in Volume 120 Ohio Laws, at page 444. It also appears in the pocket supplement to Volume 10 of Page's Ohio Code Annotated. It became effective September 16, 1943. It is a new statute prescribing a new offense.

In this state there are no crimes save those prescribed by statute.

In the Supplement to Page's Code, in which the statute appears, no comparative legislation of other states is noted, and we have been unable to find any, so the statute is apparently not patterned after legislation of any other state.

Under the provisions of §12447 GC prescribing the offense of larceny, to constitute larceny in a case where the owner voluntarily parts with the possession of his property, two other conditions are essential.

1. The owner at the time of parting with the possession, must expect and intend that the thing delivered will be returned to him or disposed of under his direction for his benefit:

2. The person taking the possession must at the time intend to deprive the owner of his property in the thing delivered.

But where the owner intends to transfer, not the possession merely, but also the title to the property, although induced thereto by fraud and fraudulent pretenses of the taker, the taking and carrying away do not constitute a larceny. In such case the title vests in the fraudulent taker and he cannot be convicted of the crime of larceny for the simple reason that, at the time of the transaction, he did not take and carry away the goods of another person but the goods of himself.

Kellogg v. State, 26 Oh St 15.

Under the provisions of §13104 GC, prescribing the offense of obtaining property by false pretenses, such false pretense must relate to a past event or an existing fact. Any representation or assurance in relation to a future transaction is not included.

Dillingham v. State, 5 Oh St 280; Winnett v. State, 13 C. C. 516, 10 C. D. 245; Affirmed, State v. Winnett, 62 Oh St 650.

As is commonly known, many swindles are perpetrated by inducing the owner to part with the possession or title to his property by means of false or fraudulent representations as to future events or transactions which, as shown above, are not punishable under either the larceny statute or the statute relating to obtaining property by false pretenses, and it is apparent that the legislature enacted §12447-1 GC, above mentioned, for the purpose of remedying the deficiencies and inadequacies of said statutes in this respect and making such swindles penal offenses.

This new statute differs from the larceny statute in that if either the possession or the title to property is obtained with the consent of the person from whom it is obtained, it is subject to its provisions and it differs from the statute prescribing the offense of obtaining property by false pretenses in that the false pretense statute prescribes an offense of obtaining property "by false pretense with intent to defraud" while it prescribes an offense of obtaining property with the consent of the person from whom it is obtained, provided such consent is induced "by a false or fraudulent representation, pretense, token or writing."

As used in §12447-1 GC, token means a document or sign of the existence of a fact, and a false token is a false document or sign of the existence of a fact,—in general use for the purpose of a fraud.

The devising or intention to devise a scheme or artifice to defraud, or for obtaining money or property by means of a false or fraudulent representation, pretense, token, or writing, by the actor, is necessarily implied in this section as a condition precedent to the making by the actor of any false or fraudulent representation, pretense, token or writing.

Under the provisions of this section, any representation, pretense, token or writing, made by the actor in furtherance of a scheme or artifice to defraud, is a fraudulent representation, pretense, token or writing, and may, depending upon the specific character thereof, be both false and fraudulent, and a fraudulent representation, pretense, token or writing may relate to future facts, events and transactions, as well as to existing facts and past events, and may be promissory in character.

The fraudulent conduct proscribed by §12447-1 GC, except that it does not involve the use of the mails in its execution, is therefore similar to the fraudulent conduct proscribed by Section 215 of the U. S. Criminal Code (Sec. 338, U. S. C. A. Vol. 18 page 134) the pertinent part of which reads as follows:

"Whoever, having devised or intending to devise any scheme, or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises * * * shall for the purpose of executing such scheme or artifice, or attempting to do so, places, or causes to be placed any letter * * * whether addressed to any person residing within or outside the United States, in any post office * * * to be sent or delivered by the post office establishment of the United States * * * shall be fined not more than one thousand dollars or imprisoned not more than five years, or both."

While in §12447-1 GC, the making of false or fraudulent tokens or writings is included in the classes of fraudulent conduct which are not specifically included in the classes of fraudulent conduct proscribed in Section 215 of the U. S. Criminal Code, the promotion of which through the use of the mails is thereby penalized; and although Section 215 of the U. S. Criminal Code includes false or fraudulent promises in the classes of fraudulent conduct proscribed by it, which are not included in the classes of fraudulent conduct proscribed by §12447-1 GC, it is obvious that the fraudulent conduct which is proscribed in each of said sections is of the same general character, and that the decisions applicable to the interpretation and construction of Section 215 of the U. S. Criminal Code are therefore applicable to the interpretation and construction of §12447-1 GC.

Illustrative of these decisions are the following:

In order to establish a scheme to 'defraud' within the scope of Section 215 U. S. Criminal Code, it is not necessary that there should be an actual misrepresentation of an existing fact, or that the elements necessary to constitute common law action of 'deceit' exist, since this section prohibits any scheme or artifice to defraud.

U. S. v. McCoy, D. C. Mich. 1942; 45 F. Supp. 1007. The crime consists in the making of those promises which the parties never intended to perform, or false representations which they never intended to make good.

Barnard v. U. S. (C. C. A. 9) 16 F. (2d) 451.

172

Fraud is established by showing that defendant knew that he would not perform a promissory representation.

Knickerbocker Merchandising Co. v. U. S. (C. C. A. 2) 13 F. (2d) 544.

False representations as to intended us of funds collected held to establish a fraudulent scheme.

U. S. v. Rosenfeld (C. C. A. 2) 57 F. (2d) 74.

To use the mails in order to carry out a scheme of getting money by the making of promises or agreements which, whether known to be impossible of performance or not, there is no intention to perform, is a forbidden use of the facilities of the post office department.

Durand v. United States, 161 U. S. 306, 313; L. Ed. 709, 711; 16 Sup. Court Rep. 508.

A scheme or artifice to defraud, within the meaning of Sec. 215 U. S. Criminal Code, respecting unlawful use of the mails, may be devised through mere representations and promises as to the future, although no representation as to an existing fact is made, where there is an attempt thereby to entrap the unwary and to secure money from them on the faith of the scheme, which is glittering and attractive in form, yet unreal and deceptive in fact and known to the person devising it to be such.

Durland v. United States, 161 U. S. 305, 40 L. Ed. 700.

Evidence to support a conviction of using mails to defraud in the sale of rabbits and guinea pigs at $5.00 each, under promise to buy all progeny at $2.50 each, with intent not to keep the promise. Defendant contended that he acted in good faith, but it was impossible to fulfill the promises. "What was in his mind could, of course, only be judged by how he dealt with his customers and what he did with the incoming flood of money."

Rowan v. U. S. (C. C. A. 7) 227 Fed. 777, 25 A. L. R. 876.

Considered in the light of these decisions, the gravamen of the offense proscribed in §12447-1 GC, and charged in the indictment and correctly charged by the trial court in the instant case is:

That the possession or title to the property was obtained by the person charged, with the consent of the person from whom it is charged it was obtained, and that such consent was induced by false or fraudulent representation, pretense, token or writing; and that the false or fraudulent representation, pretense, token or writing, was made with the specific intention of procuring the consent of the person from whom the property was obtained, to part with the possession or title; and the false or fraudulent representation, pretense,

token or writing, was such as to be a decisive influence on the mind of the party consenting, so that without its weight he would not have consented to part with his property.

That there was an intent at the time of obtaining possession or title to the property, on the part of the person charged, to deprive the person from whom it was obtained, of his property, and permanently to appropriate it to his own use. That such false and fraudulent representation, pretense, token, or writing, consisted in making a representation, pretense, token, or writing, which the person charged, knew to be false or never intended to carry out, whichever the case may be, with intent to induce the person from whom the property was obtained, to give up possession and title to the property.

It consists of deception or artifice deliberately perpetrated upon the person from whom the possession or title to the property is obtained, for the purpose of obtaining the possession or title to said property for the defendant's own use.

As appears from the foregoing discussion, under the provisions of §12447-1 GC, irrespective of whether a false pretense must relate to a past event or an existing fact, a fraudulent representation pretense, token or writing, does not have to relate to past events or existing facts but may relate to future facts, events and transactions, so that a conviction of the offense prescribed by said section and charged in the indictment in this case, may be had regardless of whether there is proof of a false pretense relating to a past event or to an existing fact.

(b) There is evidence tending to prove beyond a reasonable doubt that the giving of the notes to purchasers of automobiles as hereinbefore mentioned, was a mere incident in the scheme to defraud devised by the defendant. As the giving of the notes was a mere incident in a fraudulent scheme it does not prevent the act of the defendant from being larceny by trick.

**Young v. State, 44 Oh Ap 1.**

(Motion for leave to file petition in error overruled June 15, 1932.)

Stexher v. State of Wisconsin, 70 A. L. R. 203 and cases cited in annotations to this case 70 A. L. R. 208.

(c) While the defendant did not personally make the representations in question, and such representations were made, in apparent good faith without intent to defraud, by the salesmen employed by the defendant, there is evidence tending to prove beyond a reasonable doubt that the representations made by the salesmen were made at the express direction of

the defendant and on his behalf; that the defendant had approximately only $1000.00 in capital when he first engaged in the business of buying and selling automobiles, and that such business continued for approximately eight months; that in carrying on and conducting such business the defendant out of the proceeds of automobiles sold through such representations, paid, for such automobiles as were delivered by him, prices greatly in excess of the amounts for which he sold them; and out of such proceeds also paid to himself and some of his employees, excessive salaries; and made, to some of his employees and other persons, gifts of expensive automobiles and other expensive merchandise; that he converted large portions of such proceeds to his own use for purposes other than those connected with his ostensible business of buying, selling and servicing automobiles; that the defendant kept what purported to be books of said business which did not reflect the prices paid by him for such automobiles as he purchased and delivered; and that during the period he was engaged in such business, which, as above stated, was approximately eight months, failed to deliver automobiles for which he had received approximately one million dollars in advance payment, and upon being adjudicated a bankrupt following the close of his said business, was found to have assets considerably less than one hundred thousand dollars.

From this evidence the jury was warranted in finding beyond a reasonable doubt that the representations made by the various salesmen employed by the defendant were made by the defendant, and that they were made by him with intent, at the time, of obtaining possession and title to the property of the persons mentioned in the various counts of the indictment, from them respectively, with their respective consents and to appropriate it to his own use, and that such representations were fraudulent in that the defendant never intended to carry them out.

(d) The evidence in this case is so voluminous that it is impossible to discuss it in detail, so that in considering the appellant's contention of failure of proof in other respects we deem it sufficient to say that, interpreting and construing §12447-1 GC, as we have interpreted and construed it, and as the trial court in its charge correctly interpreted and construed it, there is competent, credible and substantial evidence of such convincing character tending to prove each and every essential element of the offense charged in the indictment (as outlined in the amended bill of particulars filed herein) that the jury was warranted in finding the defendant guilty

beyond a reasonable doubt, of the offense charged in the indictment.

For the reasons mentioned, this second assignment of error is without merit.

3. The third assignment of error relates to claimed errors in the general charge and the refusal of the trial court to give special instructions to the jury, requested by the defendant after the argument had been completed.

Considering the general charge as a whole, we find no error in it prejudicial to the defendant.

Such portions of the special instructions requested by the defendant, as were correct statements of law applicable to the issues in the case, were included in the general charge; and such of the requested instructions as were not correct were properly refused by the court.

This assignment of error is therefore without merit.

4. The fourth assignment of error is that the court erred in the admission of evidence.

We have already considered the first assignment of error, in which it is charged that the court erred in the admission of the testimony of the official stenographer as to the testimony of the defendant taken in bankruptcy court, and have held such testimony was properly admitted.

The defendant, under this assignment, makes the further contention that the court erred in the admission of the testimony of persons other than the persons named in the various counts of the indictment, as to transactions with the defendant which were of a similar nature to the transactions of the persons named in such counts, with the defendant.

Such testimony was admissible to show the nature and character of the operations of the defendant, and was admissible under the provisions of §13444-19 GC, the "similar offenses" or 'like act' statute.

Error is also claimed in the admission of the testimony of Detroit automobile dealers showing the prices at which they sold automobiles to the defendant to be greatly in excess of the prices for which the defendant sold them, and the testimony of various persons showing how the defendant squandered the money of persons who had paid the purchase price of automobiles in advance with their orders and who never received such automobiles.

This evidence was admissible to show the intent of the defendant to defraud, as charged in the indictment, and the court properly admitted it.

This assignment of error is also without merit.

5. The fifth assignment of error charges irregularity in proceedings of the court in the following particulars:

(a) In permitting Ida L. Drake, Clerk of the Bankruptcy Court to answer questions pertaining to the bankruptcy of one Joseph Laronge and the Van Sweringens.

(b) The sustaining of an objection of the state to the argument of defense counsel, on the ground that defense counsel had incorrectly stated the law.

(c) In the final argument of the prosecuting attorney in which he made a reference to "Ponzi" in characterizing the fraud perpetrated by the defendant.

The court properly refused to admit testimony as to the bankruptcies of Joseph Laronge and the Van Sweringens as such testimony was irrelevant to the issues in this case.

In his argument, counsel for the defendant made the following statement:

"I do want you to be duly impressed with the facts here, and if you are duly impressed with the facts it will appear to you that there was no misrepresentation made here by any of these salesmen as to a past or existing fact. They were wrong about the facts."

The state objected to this line of argument on the ground that it was not a correct statement of the law, and the court then suggested to counsel to be a little more careful on quoting the law.

The argument made by counsel for the defendant had a tendency to lead the jury to believe that they were limited, in their consideration, to misrepresentation of past or existing facts, while under the law as hereinbefore noted, their consideration was not so limited.

The suggestion made by the court to counsel was therefore proper.

Counsel for the defense, in his argument, had referred to "Ponzi" so that the use of this word by the prosecuting attorney in his answering argument was proper rebuttal. Furthermore, the use of the name "Ponzi" was a apt characterization of a type of swindle with which the defendant was charged.

This assignment of error is also without merit.

6. The sixth assignment of error is entitled "For other errors of Law" but the appellant only specifies errors in overruling defendant's motion for a new trial and other errors which appear on the face of the record.

The grounds of the motion for a new trial are all incorporated in appellant's assignments of error and have been heretofore discussed and disposed of adversely to the appellant.

The appellant does not argue any error which appears on the face of the record and the court under its statutory prerogative will not consider such alleged errors.

7. For a seventh assignment of error the appellant contends that the judgment is not sustained by sufficient evidence and is contrary to law.

We have already determined that the judgment is sustained by evidence tending to prove the guilt of defendant beyond a reasonable doubt. Our previous holdings show that the judgment is not contrary to law but so that there may be no question as to the effect of our previous holding we now specifically hold that the judgment is not contrary to law.

Finding no prejudicial error in any of the particulars specified and argued in appellant's brief, the judgment of common pleas court will be affirmed at costs of appellant and the cause remanded for execution.

DOYLE, PJ, MIDDLETON, J, concurring.